J-A24009-23

2024 PA Super 82

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASIR HARRIS | : | No. 3080 EDA 2022 |

Appeal from the Order Entered December 1, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0010111-2021

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY STABILE, J.: **FILED APRIL 23, 2024**

The Commonwealth charged Appellee Jasir Harris with attempting to murder two police officers and related offenses on August 23, 2021, when Appellee was sixteen years and eight months old. On December 1, 2022, following an evidentiary hearing, the trial court granted Appellee's motion to decertify this case and transfer it to the Juvenile Division of the court ("Juvenile Court") as a delinquency matter. The Commonwealth appeals from the decertification order. We hold that the decertification order is defective due to the trial court's failure to consider multiple criteria that it was required to take into account before granting decertification. Accordingly, we vacate the decertification order and remand for further review of the evidence presented during the decertification hearing.

On August 25, 2021, Appellee was arrested and charged with two counts of attempted murder and related charges. On December 16, 2021, a

preliminary hearing took place during which the Commonwealth presented the following evidence.

On August 23, 2021, at about 8:00 p.m., Philadelphia police officers Glenn and Allen, in uniform but in an unmarked patrol car, responded to a radio call reporting an armed carjacking of a white Chevrolet Malibu at a Philadelphia Wawa convenience store.

The owners of the carjacked vehicle helped other officers track the car's location using the car's "OnStar" service. Officers Glenn and Allen found the car parked in the 2200 block of North Reese Street, about two miles away. There they also saw a dark colored sedan parked directly in front of the Malibu and a black person wearing a white T-shirt—Appellee, the car's driver and only occupant—in the driver's seat. Officer Glenn, who had initially driven past the Malibu and the dark colored sedan, turned around to continue to investigate. At that moment, Appellee began firing a gun at them.

Officer Glenn sustained a gunshot wound to his head from a bullet fragment and injuries from glass shards, and Officer Allen received facial lacerations from flying glass when bullets pierced the vehicle's rear driver's side window. Appellee fired approximately 16 shots at the officers in their car and then fled, leaving the dark sedan's door open. Despite his injuries, Officer Glenn attempted to pursue Appellee on foot, while Officer Allen, who had jumped into the driver's seat, attempted to do so by car.

At approximately 8:09 p.m., two other officers, Officers Lally and Williams, were responding to the radio call of a carjacked vehicle being tracked

to the 2200 block of North Reese Street. They received a report that shots had been fired at police and that a possible perpetrator was a black male wearing a white T-shirt and gray sweatpants. In the 2200 block of North Fairhill Street, one block west of Reese Street, a woman approached Officers Lally and Williams and gestured toward the direction of the 2300 block of North Fairhill Street. When the officers drove to this block, they saw Appellee, wearing a white T-shirt and gray sweatpants, in a group of people standing on the sidewalk. Appellee seemed out of place because he was younger than the others in the group and appeared to have fresh grass and mud stains on his pants and shoes. The officers approached Appellee and asked for his name and date of birth. Appellee provided an accurate last name but a false first name and date of birth. It appeared to the officers that Appellee was nervous and breathing very heavily.

Since Officers Glenn and Allen were in the hospital for their injuries and unavailable to attempt an identification, Appellee was transported to the police department's Homicide Unit while detectives recovered and reviewed surveillance video from nearby businesses and residences. The surveillance video reflected, among other things, the carjacked white Malibu entering the 2200 block of North Reese Street, followed shortly afterward by a dark colored vehicle driven by a black male wearing a gray sweat jacket with a white shirt underneath. Immediately after the unmarked patrol car driven by Officer Glenn entered and then exited the view of the camera, the video shows several individuals running north on Reese Street and then west on Dauphin Street in

the aftermath of the shooting (which occurred just out of the camera's view). The last individual—a thin black male with dreadlocks wearing a gray sweat jacket and a white shirt underneath, gray sweatpants, and black sneakers—was carrying a gun.

Appellee's appearance and clothing (except for the sweat jacket) closely matched the person seen in the video carrying a gun. Accordingly, police secured Appellee's clothing as evidence. Near the scene of the shooting, homicide detectives found a discarded gray Nike sweat jacket identical to the one worn by the person carrying the gun on the surveillance video and matching the pants Appellee was wearing. One of the discarded sweat jacket's pockets contained keys to the dark colored sedan, a dark blue Nissan that had been stolen in Philadelphia the previous day.

At the conclusion of the preliminary hearing, all charges against Appellee were held for court except for a theft charge.

At the time of the alleged offenses, Appellee was sixteen years old and eight months and had a lengthy record of delinquency.[1]

_____

[1] In February 2020, Appellee was arrested and charged with robbery and related offenses in February 2020. In April 2020, a bench warrant issued after he allowed his court-ordered GPS monitor's battery to run down. The following month, he was arrested for new offenses and charged with violations of the Uniform Firearms Act. In July 2020, he tendered admissions to theft and simple assault in connection with the robbery case and to possession of firearms by a minor in the firearms case and was adjudicated delinquent. He was in custody from November 2020 until June 2021, when he was released on probation. He soon began violating the conditions of his probation, resulting in issuance of another bench warrant, which was in effect at the time
*(Footnote Continued Next Page)*

On January 26, 2022, Appellee filed a motion to decertify the case and transfer it to Juvenile Court. He argued that he could not be tried as an adult because, at the time of the alleged offenses, he was only sixteen years and eight months old.

On November 22, 2022, the court held an evidentiary hearing and took the case under advisement. On December 1, 2022, without announcing a decision, the court issued an order granting Appellee's motion for decertification and transferring his case to Juvenile Court. The two-sentence order did not include findings of fact or conclusions of law. It simply stated that "having heard testimony and oral arguments [and having] reviewed the exhibits provided by both the Commonwealth and the defense," the court found that "that [Appellee] is amenable to treatment, supervision and rehabilitation as can be provided by the Juvenile Court." Order, 12/1/2022.

On December 20, 2022, the Commonwealth filed a notice of appeal in which it certified, in accordance with Pa.R.A.P. 311(d), that the order will terminate or substantially handicap the prosecution. The Commonwealth filed a timely statement of matters complained of on appeal, and the trial court filed a Pa.R.A.P. 1925(a) opinion reiterating its decision that Appellee was amenable to treatment in Juvenile Court.

The Commonwealth raises the following grounds in this appeal:

---

of his arrest for the shooting at issue here. In October 2020, he was arrested for new violations of the Uniform Firearms Act, to which he tendered admissions and was adjudicated delinquent in February 2023.

Did the lower court err by granting the then nearly-18-year-old Appellee's motion for decertification and transferring to juvenile court a case including multiple counts of attempted murder and related offenses, all of which were committed while Appellee was subject to a bench warrant, when:

(a) contrary to statutory requirements, the decertification order failed to set forth specific findings of fact and conclusions of law;

(b) the decertification order did not even acknowledge or address any of the required public interest factors apart from Appellee's personal interest claim of amenability to treatment, supervision, and rehabilitation; and

(c) even in addressing Appellee's claimed amenability to treatment, supervision, and rehabilitation, the lower court's order did not acknowledge or analyze required factors including (i) the nature and extent of [his] prior delinquent history and the failure of previous attempts by the juvenile court to rehabilitate him and (ii) the likelihood that he would be successfully rehabilitated prior to the expiration of juvenile court jurisdiction?

Commonwealth's Brief at 4.

An order transferring a case from the trial division of the Court of Common Pleas to that court's juvenile division is immediately appealable by the Commonwealth as of right. *Commonwealth v. Johnson*, 669 A.2d 315, 322–23 (Pa. 1995). Accordingly, we have jurisdiction over this interlocutory appeal. We review orders granting decertification and transferring a case from adult criminal court to Juvenile Court for gross abuse of discretion. *Commonwealth v. L.P.*, 137 A.3d 629, 635 (Pa. Super. 2016).

Preliminarily, Appellee argues that the Commonwealth waived its argument on appeal due to the vagueness of its Pa.R.A.P. 1925(b) statement of matters complained of on appeal. The Commonwealth raised one issue in

its Rule 1925(b) statement, "Did the lower court err in granting the motion for decertification and transferring the case to the juvenile court?" Pa.R.A.P. 1925(b) Statement, 12/15/22. We decline to find waiver. We have held that "a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." Here, the Commonwealth's statement allowed the court to identify the sole issue raised in the Commonwealth's appeal, an objection to decertification and transfer of this case to juvenile court. Moreover, the Commonwealth could not make its statement more specific due to the vague nature of the court's two-sentence order and the court's failure to issue findings of fact and conclusions of law in open court or in its order.

The Commonwealth contends in this appeal that the trial court failed to make specific findings of fact and conclusions of law at the time it granted Appellee's motion for decertification and address multiple critical criteria relating to the public interest in both its decertification order and its Pa.R.A.P. 1925(a) opinion. We agree.

The Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, defines a "delinquent act" in relevant part as follows:

(1) The term means an act designated a crime under the law of this Commonwealth . . .

(2) **The term shall not include:**

(i) The crime of murder.

(ii) Any of the following prohibited conduct where the child was 15 years of age or older at the time of the

- 7 -

alleged conduct and a deadly weapon as defined in 18 Pa.C.S. § 2301 (relating to definitions) was used during the commission of the offense which, if committed by an adult, would be classified as:

. . .

(I) **An attempt**, conspiracy or solicitation **to commit murder** or any of these crimes as provided in 18 Pa.C.S. §§ 901 (relating to criminal attempt), 902 (relating to criminal solicitation) and 903 (relating to criminal conspiracy).

42 Pa.C.S.A. § 6302 (definition section; emphasis added). "Pursuant to 42 [Pa.C.S.A.] § 6322(a) and § 6355(e), when a juvenile has been charged with a crime listed under paragraph 2(ii) . . . of the definition of 'delinquent act' in 42 [Pa.C.S.A.] § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction." *Commonwealth v. L.P.*, 137 A.3d 336, 338 (Pa. Super. 2016). Criminal attempt to commit murder, where the juvenile was fifteen years or older at the commission of the alleged offense and a deadly weapon was used, is one of the offenses that requires jurisdiction to vest in the criminal division. 42 Pa.C.S.A. § 6302.

When jurisdiction vests with the criminal division, however, the juvenile may seek a transfer to the juvenile system through the process of decertification. "In determining whether to transfer a case charging murder or any offense excluded from the definition of 'delinquent act' in section 6302, the child shall be required to establish by a preponderance of the evidence that the transfer will serve the public interest." 42 Pa.C.S.A. § 6322(a). To

assess if a transfer will serve the public interest, the court considers the factors enumerated in 42 Pa.C.S.A. § 6355(a)(4)(iii).

Section 6355(a)(4)(iii) prescribes that when determining whether transfer will serve the public interest, the court must consider **all** of the following criteria:

(A) the impact of the offense on the victim or victims;
(B) the impact of the offense on the community;
(C) the threat to the safety of the public or any individual posed by the child;
(D) the nature and circumstances of the offense allegedly committed by the child;
(E) the degree of the child's culpability;
(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:

(I) age;
(II) mental capacity;
(III) maturity;
(IV) the degree of criminal sophistication exhibited by the child;
(V) previous records, if any;
(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;
(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;
(VIII) probation or institutional reports, if any;
(IX) any other relevant factors….

42 Pa.C.S.A. § 6355(a)(4)(iii).

When the trial court finds that a juvenile has met his burden to show that the public interest will be served by transferring the case to the "division

… assigned to conduct juvenile hearings," the court must "make findings of fact, including specific references to the evidence, and conclusions of law in support of the transfer order." 42 Pa.C.S.A. § 6322(a), (b); Pa.R.Crim.P. 597(C) ("At the conclusion of the hearing, but in no case longer than 20 days after the conclusion of the hearing, the judge shall announce the decision in open court. The judge shall enter an order granting or denying the motion for transfer and set forth in writing or orally on the record the findings of fact and conclusions of law").

"If the court does not make its finding within 20 days of the hearing … the defendant's petition to transfer the case shall be denied by operation of law." 42 Pa.C.S.A. § 6322(b). This statutory requirement of a prompt order with specific findings of fact and conclusions of law respects the presumption embodied in the Juvenile Act that certain serious offenses, even when committed by youthful offenders, belong in criminal court. *See* 42 Pa.C.S.A. § 6302(2) (defining "delinquent act" and enumerating crimes not included by the term). It also facilitates appellate review of orders granting decertification of criminal cases that the Commonwealth may pursue as of right. *Johnson*, 669 A.2d at 322–23.

In this case, the court ran afoul of 42 Pa.C.S.A. § 6322 and Pa.R.Crim.P. 597(C) by failing to give reasons in open court for granting decertification and failing to include specific findings of fact and conclusions of law in its decertification order. These omissions might not have been significant had

the court's Pa.R.A.P. 1925(a) opinion analyzed all of the public interest factors required under Section 6355(a)(4)(iii).  Unfortunately, it did not.

The opinion included the following analysis:

Undoubtedly, the crimes with which Appellee is charged are extremely serious, and it was undisputed that the instant arrest was not Appellee's first contact with the criminal justice system; however, as set forth in the report prepared by the Mitigation Report Youth Sentencing and Reentry Project (YSRP) dated August 25, 2022, … when provided with a supportive environment, Appellee flourished.  As outlined in the YSRP report, [Appellee's] home life was turbulent.  At no time did he receive therapy for the violence and drug use inside his home[,] nor was he ever counseled to help develop coping skills for the three times which he, an innocent bystander, was injured by gunfire.  Additionally, he did not receive counseling for the trauma which resulted from his witnessing the shooting death of his cousin outside the front door of his home where they both lived.  His school record was noteworthy only in that he was frequently late or truant.

The documents [appended to] the YSRP report established, beyond a doubt, the amenability of [Appellee] to treatment.  The report card from the Pennypack School at the Juvenile Unit of the Riverside Prison (RCF) reflected all A's and B's.  The copies of the Honor Roll and court certificates he received, and the letters of interest he received from six colleges … as well as a letter signed by several staff members from this same prison facility, highlighted the positive qualities which the juvenile possesses.

The mitigation listed above was buttressed by the witnesses who testified on [Appellee's] behalf at the decertification hearing.  Specific testimony is drawn to the testimony of Dr. Damone Jones, who worked with the juvenile at RCF several times a month.  He described the juvenile as a very good basketball player, team captain and a leader of the juveniles.

The testimony of Josh Graupera, the creative arts coordinator at the Youth Arts and Self-Empowerment Project at RCF, was in the same vein.  He testified that he met with [Appellee] weekly beginning in February 2022.  He described [Appellee] as a leader in the arts, writing and personal development program who sets a positive example for the other juveniles who are also in custody.

- 11 -

Appellee was described as one who has a plan and a vision for his future which included going into business management.

Also contained in the Mitigation Report is the forensic evaluation of Constance Mesiarik dated August 10, 2022. She reviewed a number of documents, conducted a mental status examination, and conducted a number of tests. Having done these tasks, she concluded that [Appellee] is amenable to rehabilitation. She identified five treatment areas, which include educational remediation, anger management, structured pro-social activities, substance abuse education and mental health counseling. Given the resources which are available to one who is in juvenile court placement, as this juvenile would be for the next three years, it is apparent that he is amenable to rehabilitation in that environment as he grows and matures.

1925(a) Opinion, 2/13/2023, at 2-4.

The opinion focused almost exclusively on one public interest criterion in Section 6355(a)(4)(iii)—factor G, Appellee's amenability to treatment, supervision and rehabilitation. In addition, the opinion made only a passing reference to factor D, the nature and circumstances of the alleged offenses ("[u]ndoubtedly, the crimes with which Appellee is charged are extremely serious"). The opinion, however, completely failed to address many important other criteria, such as factors A, B, and C—the impact of Appellee's offense on the victims, the impact of the offense on the community, and the threat to the safety of the public or any individual posed by the child. Moreover, the opinion also failed to analyze factor F, the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system.

In prior cases, we have remanded for further proceedings when the court failed to provide sufficient analysis for its decision to certify juvenile

- 12 -

defendants to adult criminal court. *See Commonwealth v. Deppeller*, 460 A.2d 1184, 1187-88 (Pa. Super. 1983) (where juvenile hearing judge did not provide any reasons for transfer order certifying juvenile to adult court, Superior Court was unable to afford any meaningful review to juvenile court's proceedings, and case was remanded, limited to evidence introduced at initial certification hearing); *Commonwealth v. Stokes*, 421 A.2d 240, 244 (Pa. Super. 1980) (remanding for new hearing when certification court advanced no specific reasons for its conclusion that juvenile is not amenable to treatment, supervision, or rehabilitation as juvenile through available facilities). We conclude that the same remedy is in order when, as here, the trial court fails, in both its decertification order and its Pa.R.A.P. 1925(a) opinion, to analyze multiple statutory criteria in the course of granting decertification and transferring the case to juvenile court.

The Commonwealth presented evidence during Appellee's preliminary hearing that Appellee shot at and attempted to murder two police officers who were responding to a report of a carjacking. Appellee has a lengthy record of delinquency for serious offenses, including theft, simple assault and firearms violations, and for violating the terms of his probation. Under these circumstances, we see no valid basis for granting decertification without careful consideration of all critical factors, including, in particular, the impact of his alleged offenses on the victims and the community, the threat to public safety, and the adequacy and duration of dispositional alternatives available in the adult criminal justice system.

For these reasons, we vacate the order granting decertification and remand the case to the trial court for further review of the evidence presented during the November 22, 2022, evidentiary hearing. We direct the court to consider **all** factors required under Section 6355(a)(4)(iii) in the course of determining whether to grant Appellee's motion for decertification. If the court enters an order granting decertification and transferring the case to juvenile court, then the court shall enter written findings of fact, including specific references to the evidence, and conclusions of law in support of the order.

Order vacated. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/23/2024